UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH R. FLYING HORSE,<br><br>              Plaintiff,<br><br>vs.<br><br>JAMES HANSEN, Parole Agent, Sued in his Official and Individual Capacities;<br>DOUG CLARK, Supervising Parole Agent, Sued in his Official and Individual Capacities;<br>KRISTA BAST, Case Manager, Sued in her Official and Individual Capacities;<br>SETH HUGHES, Unit Coordinator, Sued in his Official and Individual Capacities;<br>DARIN YOUNG, Warden, of the South Dakota State Penitentiary, Sued in his Official and Individual Capacities;<br>DENNY KAEMINGK, Secretary of Corrections, Sued in his Official and Individual Capacities;<br>MIRANDA WARD, SDSP Case Manager, Sued in her Official and Individual Capacities;<br>RILEY DEGROOT, SDSP Case Manager, Sued in his Official and Individual Capacities;<br>TROY PONTO, SDSP Associate Warden, Sued in his Official and Individual Capacities;<br>DARIK BEIBER, SDSP Unit Manager, Sued in his Official and Individual Capacities;<br>VAL MCGOVERN, Board Staff, Sued in her Official and Individual Capacities; | 4:16-CV-04119-KES<br><br><br><br><br>ORDER DISMISSING COMPLAINT IN PART AND DIRECTING SERVICE |

| | |
|---|---|
| STACY COLE, Board Staff, Sued in her Official and Individual Capacities; KAYLA STUCKY, Board Staff, Sued in his Official and Individual Capacities; ASHLEY MCDONALD, DOC Attorney, Sued in his Official and Individual Capacities; PENNINGTON COUNTY, Respondeat Superior, for Pennington County State's Attorney Office; SOUTH DAKOTA DEPARTMENT OF CORRECTIONS; SOUTH DAKOTA BOARD OF PARDONS AND PAROLES, <br><br>           Defendants. | |

## INTRODUCTION

Plaintiff, Joseph R. Flying Horse, is an inmate at the South Dakota State Penitentiary in Sioux Falls. Flying Horse filed an amended complaint, arguing that defendants violated his constitutional rights. Docket 9. For the following reasons, the court dismisses Flying Horse's amended complaint in part and directs service.

## FACTUAL BACKGROUND[1]

On November 7, 2016, Flying Horse filed an amended complaint under 42 U.S.C. § 1983, raising a number of claims that defendants violated his constitutional rights in connection to his detention while on parole. Docket 9. The court screened Flying Horse's amended complaint under 28 U.S.C.

---

[1] The complete facts alleged in the complaint can be found in the court's previous order. *See* Docket 14.

§ 1915A, found his claims barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and dismissed his complaint. Docket 14. Flying Horse appealed. Docket 18.

The Eighth Circuit Court of Appeals reversed in part, affirmed in part, and remanded the case to this court for further proceedings. Docket 25. The Eighth Circuit found that to the extent Flying Horse sought release from confinement, he must seek habeas relief, and to the extent he sought damages for his confinement after his parole was revoked, his claims were barred by *Heck*. *Id.* at 2-3. But the Eighth Circuit found that to the extent Flying Horse sought damages for the time period between when his parole detainer expired and when his parole was revoked, *Heck* did not bar his claims. *Id.* at 3. Therefore, the Eighth Circuit remanded the case to this court. *Id.* Because the court has not screened Flying Horse's claims that are not *Heck* barred on the merits, his amended complaint must be screened again under § 1915A.

**LEGAL STANDARD**

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v.*

*Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 1915A(b).

## DISCUSSION

Flying Horse raises claims under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Docket 9 at 36-38. He also claims that his rights under the Ex Post Facto Clause were violated. *Id.* at 38. Finally, he claims that these violations caused him a "loss of consortium with his family and work," caused him mental anguish, caused him emotional distress, and a "loss of life[.]" *Id.* at 38-39. He claims that all of the defendants individually and collectively violated his rights in each of his claims. *Id.* at 36-39.

### I. Unlawful Detainment and Illegal Confinement

The majority of Flying Horse's allegations concern the time period between when his parole detainer expired and when his parole was revoked.

He was incarcerated throughout this time. Flying Horse claims that this incarceration violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

### A. Fourteenth Amendment

A parolee has a liberty interest in his conditional freedom that is "within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 484 (1972). Flying Horse alleges that defendants violated his rights by illegally detaining him. He alleges that when his parole detainer expired, he was not released. He was told that he was being held due to pending charges, but when he received his state records, they showed that he had no charges pending. Flying Horse argues that defendants, while working for the parole board or the Department of Corrections, detained him without a parole detainer, without pending charges, and without revoking his parole. Therefore, Flying Horse states a claim under the Fourteenth Amendment.

### B. First Amendment Retaliation

Flying Horse alleges that defendants violated his rights under the First Amendment by retaliating against him. To state a claim for retaliation in violation of the First Amendment, Flying Horse "must 'show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (citing *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)).

5

Flying Horse alleges that he went to trial in his criminal case and that he filed this civil case against defendants. Both the filing of an inmate lawsuit and presenting a defense in a criminal trial are protected activities. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007); *United States v. Petters*, 663 F.3d 375, 381 (8th Cir. 2011). These actions would chill a person of ordinary firmness from continuing in the protected activity, and Flying Horse alleges that all of the actions defendants allegedly took were in retaliation for defending against the criminal charges and filing his civil complaint. Therefore, Flying Horse states a retaliation claim against defendants.

## II. Punishments and Conditions of Confinement

Flying Horse raises a number of claims concerning his punishments and conditions of confinement while he was detained. Flying Horse claims that he was "punished" and that "atypical hardships" were imposed upon him. He states that "a pretrial detainee may not be punished by a state prior to an adjudication of guilt[,]" Docket 9 at 16, but then alleges that there is nothing in DOC policy which authorizes defendants to punish him by "indicting and convicting him via preconviction holding conditions, i.e., lodged parolee detainer(s), prior to a judicial adjudication of his guilt in accordance with due process of law, e.g., preliminary hearing and/or probable cause determination." *Id.* at 17. He calls "[a]ny further detainment" a conspiracy to punish him for the exercise of his constitutional right. *Id.*

The majority of the "punishments" and "atypical hardships" Flying Horse complains of concern his arrest and detainment without Due Process.

6

*Id.* at 17, 18. This is essentially the same argument he raises in his Due Process claim discussed above. To the extent he seeks to state a separate claim with the same argument, it is dismissed.

At two different parts of his complaint, Flying Horse states that he was "subjected to punishment" and cites to his attached disciplinary reports. Docket 9 at 27, 29 (citing Docket 9-6; Docket 9-13; Docket 9-14). His complaint states that he was punished with three days of cell restriction for once "Placing any article over cell bars, cell front, windows, or draping articles over bunks" and twice failing "to be in position in [his] living quarters or designated area to be readily observed; not standing during standing count." Docket 9 at 5, 9. The court will analyze each claim separately.

### A. Punishment as a Detainee

First, Flying Horse claims defendants violated his rights by punishing him while he was a mere detainee. "[T]he Due Process Clause restricts punishing a detainee prior to an adjudication of guilt." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). It is unclear whether Flying Horse was indeed a detainee because he had been convicted of his underlying offense, but was yet to be convicted of a parole violation. *See Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir.1996) (discussing the different statuses and different standards).

Assuming Flying Horse is a detainee and protected by the more rigorous standard, he still fails to state a claim. "[N]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (quoting *Bell v. Wolfish*, 441

7

U.S. 520, 537 (1979)). "Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned." *Id.* (citing *Bell*, 441 U.S. at 539 n.21).

In *Smith*, the Eighth Circuit Court of Appeals found that Smith's allegations that he was put in an isolation cell for four days with a toilet overflowing with raw sewage amounted to a *de minimis* imposition and did not implicate constitutional concerns under *Bell*. *Id.* Flying Horse alleges he was detained on cell restriction for three days. These conditions are less harmful than those in *Smith*. Therefore, Flying Horse fails to state a claim under the Due Process Clause because he was punished as a detainee.

### B.  Atypical and Significant Hardships

Flying Horse also claims that defendants violated his rights by imposing upon him hardships that were " 'atypical or significant . . . in relation to the ordinary incidents of prison life.' " *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In order to determine whether these hardships violate a prisoner's liberty interest, the court compares "the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life." *Id.* (citation omitted). The Eighth Circuit has "consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (citation omitted). In fact, in *Orr*, the court held that incarceration in administrative segregation for nine months did not violate the

8

prisoners' rights. Therefore, Flying Horse's three day cell restrictions do not represent "atypical or significant" hardships.

### C. Incarceration with Violent Criminals

Finally, Flying Horse alleges that defendants violated his rights by incarcerating him with violent, convicted prisoners when he was a mere parolee. Flying Horse raises this claim under the Eighth Amendment. Even if Flying Horse was a pretrial detainee at this point, whose claims are analyzed under the Due Process Clause of the Fourteenth Amendment, the same deliberate-indifference standard that is applied under Eighth Amendment conditions-of-confinement claims applies to pretrial detainees under the Fourteenth Amendment. *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005).

In order to state a deliberate indifference claim, Flying Horse must allege (1) that his incarceration in the general population at SDSP posed a substantial risk of serious harm and (2) defendants subjectively knew of but disregarded, or were deliberately indifferent to, Flying Horse's safety. *Id.* at 602. "[T]he Supreme Court has made it clear 'deliberate indifference' requires subjective knowledge: no liability attaches 'unless the official knows of and disregards an excessive risk to inmate health and safety.' " *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, Flying Horse fails to allege that defendants knew of the risk to his safety or that that risk was "excessive." The risk Flying Horse complains of is

that prisons are dangerous places to be because prisoners are dangerous. This is not the kind of harm from which the constitution protects him. To the extent he claims that he is being incarcerated when he should not be, that claim has been raised under the Due Process Clause. Further, Flying Horse has not suffered any harm; all of the harms he complains of are things that "might" happen. Therefore, Flying Horse fails to state a claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

III. **Fourth Amendment**

Although Flying Horse raises a Fourth Amendment claim and repeatedly refers to an "illegal seizure," the court construes this as a part of his Fourteenth Amendment claim. He states that his illegal seizure "began" when he was not released after the parole detainer expired. Docket 9 at 12. He also claims that the denial of a probable cause hearing violated his right "to be free from illegal seizure under the Fourth Amendment[.]" *Id.* at 30. Therefore, to the extent Flying Horse seeks to raise a claim under the Fourth Amendment, he fails to state a claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

IV. **Fifth Amendment**

The Due Process Clause of the Fifth Amendment applies to the United States, whereas the Due Process Clause of the Fourteenth Amendment applies to the States. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Defendants are state employees or arms of the state government. Therefore,

Flying Horse's claims are properly brought under the Fourteenth Amendment, and his claims under the Fifth Amendment are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V.     Sixth Amendment

Flying Horse claims that defendants violated his rights under the Sixth Amendment by denying him a fair, impartial, and speedy trial. Docket 9 at 30. In the first stage of the parole revocation process, "the parolee is entitled to some minimal inquiry . . . held as promptly as is convenient after the arrest." *Yost v. Solano*, 955 F.2d 541, 545 (8th Cir. 1992) (citing *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972)). But this right arises under the Due Process Clause rather than the Sixth Amendment. *See Kartman v. Parratt*, 535 F.2d 450, 455 (8th Cir. 1976) ("While the Sixth Amendment speedy trial provision does not apply to parole or probation proceedings, this does not mean that the due process clause does not require a prompt and timely hearing in such proceedings"). Therefore, Flying Horse fails to state a claim upon which relief may be granted under the Sixth Amendment, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## VI.    Ex Post Facto Clause

Flying Horse alleges that defendants violated the Ex Post Facto Clause by signing a parole detainer after he had already been detained without a detainer or pending charges. Docket 9 at 14. "The ex post facto clause prohibits states from 'retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts.' " *Williams v. Hobbs*, 658 F.3d

11

842, 848 (8th Cir. 2011) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)). "To sustain a claim under the ex post facto clause, the prisoners must allege that a law creates 'a significant risk' of increased punishment." *Id.* (quoting *Garner v. Jones*, 529 U.S. 244, 255 (2000)).

Flying Horse argues that changes to parole guidelines may violate the Ex Post Facto Clause. Docket 9 at 14. Here, however, he does not allege that the guidelines were changed but that defendants detained him without detainer or charge, thus violating the unchanged guidelines. *Id.* This allegation is part of his Due Process claims. Therefore, Flying Horse fails to state a claim under the Ex Post Facto Clause upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[2]

**VII. Defendants**

Flying Horse raises all of the claims discussed above against each defendant individually and collectively. Docket 9 at 32-33. The only claims remaining are those raised under the Fourteenth and First Amendments. Because some defendants are immune from suit and Flying Horse fails to state a claim upon which relief may be granted against others, the court will discuss those defendants separately.

**A. Stacy Cole**

Flying Horse fails to state a claim against Stacy Cole. He alleges that Cole came to his cell and served him with a notice of hearing. Docket 9 at 11.

---

[2] The court construes Count VIII-XI as grounds for relief rather than standalone claims because Flying Horse raises them "under § 1983." Docket 9 at 38-39.

12

When Flying Horse asked her if he would be appointed an attorney for the hearing, Cole said no, and when he challenged her, she responded saying, "Do what you want, I'm just serving you that." *Id.* Flying Horse does not allege that Cole had anything to do with his surviving Due Process and retaliation claims. Therefore, Cole is dismissed as a defendant.

### B. Kayla Stucky and Ashley McDonald

Flying Horse fails to state a claim against Kayla Stucky and Ashley McDonald. He includes Stucky and McDonald in the list of defendants at the end of his complaint, but he makes no allegations concerning either Stucky or McDonald. Therefore, Stucky and McDonald are dismissed as defendants.

### C. South Dakota Department of Corrections and Board of Pardons and Paroles

Flying Horse fails to state a claim against the South Dakota Department of Corrections (DOC) and the South Dakota Board of Pardons and Paroles (Board). The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 65 (1989) (citations omitted). "Eleventh Amendment immunity extends to states and 'arms' of the state[.]" *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) (citation omitted). Thus, Flying Horse's claims against the DOC and the Board, state entities, are barred by the Eleventh Amendment.

### D. Val McGovern

Although "parole board members are absolutely immune from suit when considering and deciding parole questions[,]" *Figg v. Russell*, 433 F.3d 593,

598 (8th Cir. 2006) (citation omitted), Flying Horse alleges that McGovern was involved in his illegal detention. When he was detained, allegedly without a detainer or pending charges, he alleges that the parole board threatened to claim he violated parole if he did not sign a Community Transition Program release form. Docket 9 at 10-11. Flying Horse alleges that McGovern was not acting within her "official power" but was threatening to claim he violated parole after he had been illegally incarcerated for months in order to legitimize that illegal incarceration. Therefore, Flying Horse states a claim against McGovern.

Thus, it is ORDERED

1. Flying Horse's claims under the Fourth, Fifth, and Sixth Amendments, the Ex Post Facto Clause, and his claims concerning his punishments and conditions of confinement are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

2. Flying Horse fails to state a claim against Stacy Cole, Kayla Stucky, Ashley McDonald, the South Dakota Department of Corrections, and South Dakota Board of Pardons and Paroles, and they are dismissed as defendants.

3. Flying Horse's Fourteenth and First Amendment claims against James Hansen, Doug Clark, Krista Bast, Seth Hughes, Darin Young, Denny Kaemingk, Miranda Ward, Riley DeGroot, Troy Ponto, Darik

Beiber, Val McGovern, and Pennington County survive screening under 28 U.S.C. § 1915A.

4. The Clerk shall send blank summons forms to Flying Horse so he may cause the summons and complaint to be served upon the defendants.

5. The United States Marshal shall serve a copy of the complaint (Docket 1), Summons, and this Order upon defendants as directed by Flying Horse. All costs of service shall be advanced by the United States.

6. Defendants will serve and file an answer or responsive pleading to the remaining claims in the complaint on or before 21 days following the date of service.

7. Flying Horse will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

8. Flying Horse will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

9. The clerks office shall remove the "strike" from Flying Horse's case.

Dated July 13, 2017.

                                      BY THE COURT:

                                      */s/ Karen E. Schreier*
                                      KAREN E. SCHREIER
                                      UNITED STATES DISTRICT JUDGE