UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH R. FLYING HORSE,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES HANSEN, DOC PAROLE AGENT, SUED IN HIS OFFICIAL AND INDIVDUAL CAPACITIES; DOUG CLARK, DOC SUPERVISING PAROLE AGENT, SUED IN HIS OFFICIAL AND INDIVDUAL CAPACITIES; KRISTA BAST, SDSP CASE MANAGER, SUED IN HER OFFICIAL AND INDIVDUAL CAPACITIES; SETH HUGHES, SDSP UNIT COORDINATOR, SUED IN HIS OFFICIAL AND INDIVDUAL CAPACITIES; DARIN YOUNG, SDSP WARDEN, OF THE SOUTH DAKOTA STATE PENITENTIARY, SUED IN HIS OFFICIAL AND INDIVDUAL CAPACITIES; DENNY KAEMINGK, DOC SECRETARY OF CORRECTIONS, SUED IN HIS OFFICIAL AND INDIVDUAL CAPACITIES; MIRANDA WARD, SDSP CASE MANAGER, SUED IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; RILEY DEGROOT, SDSP CASE MANAGER, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; TROY PONTO, SDSP ASSOCIATE WARDEN, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; DARIK BEIBER, SDSP UNIT MANAGER, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; VAL MCGOVERN, BOARD | 4:16-CV-04119-KES<br><br><br>ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND DISMISSING MISCELANEOUS OTHER MOTIONS |

| | |
|---|---|
| STAFF, SUED IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; STACY COLE, BOARD STAFF SUED, IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; KAYLA STUCKY, BOARD STAFF, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; ASHLEY MCDONALD, DOC ATTORNEY, SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; SOUTH DAKOTA DEPARTMENT OF CORRECTIONS, SOUTH DAKOTA BOARD OF PARDONS AND PAROLES, MARK SMITH, JENNIFER ARGUETA, MARY BURGGRAAF, CATHY SOLMA, KAY NIKOLAS, KENNETH ALBERS, PAIGE WILBUR BOCK, REVEREND PATRICIA WHITE HORSE-CARDS, TIM GROSS, JC SMITH, AMBER STEVENS, DA FITZHUGH, MELISSA MATURAN, HUNTER SUMMERS,<br><br>         Defendants. | |

## INTRODUCTION

Plaintiff, Joseph R. Flying Horse, was an inmate at the South Dakota State Penitentiary in Sioux Falls. He filed this lawsuit under 42 U.S.C. § 1983. Docket 1. The court screened Flying Horse's complaint under 28 U.S.C. § 1915A and found that he stated a Fourteenth Amendment and a First Amendment claim against several defendants. Dockets 27, 90. Defendants now move for summary judgment based on qualified immunity. Docket 152. Flying Horse resists the motion for summary judgment and filed several other miscellaneous motions. Dockets 174, 158, 193, 195, 197, 203, 215.

2

# FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Flying Horse, as the non-moving party, the facts are:

On May 17, 2016, Flying Horse was arrested and charged in Pennington County for unauthorized possession of a controlled drug or substance. Docket 156 ¶ 4. Because Flying Horse was on parole at the time of the arrest, Parole Officer James Hansen placed a parole hold on Flying Horse. *Id.*

As a parole officer, Hansen can order Flying Horse to be detained for five business days. *Id.* ¶ 5. Hansen's supervisor can extend the detainer for an additional five business days. *Id.* After the expiration of the second five business days, the Executive Director for Parole Services, or his designee, can issue an extended detainer for up to 90 days. *Id.*

On June 1, 2016, the charges against Flying Horse were dismissed. *Id.* ¶ 4. Once the charges were dropped, the parole hold took effect. *Id.* The Pennington County States Attorney's office informed Hansen that they intended to refile charges. *Id.* ¶ 6.

On June 7, 2016, Hansen asked Flying Horse if he would agree to a voluntary 30-day detainer extension and Flying Horse refused to sign the consent form.[1] *Id.* On June 8, 2016, Executive Director for Parole Services Doug Clark issued a 60-day extended detainer without Flying Horse's signature. *Id.* ¶ 7. This detainer took effect on June 15, 2016. *Id.*

---

[1] Defendants' statement of undisputed fact states that this event occurred on June 7, 2017, not 2016.

On August 11, 2016, Flying Horse's case manager asked Flying Horse to sign documents agreeing to a transfer to the Community Transition Program (CTP). *Id.* ¶ 9. The case manager also asked Flying Horse to sign a 30-day extended detainer. *Id.* Flying Horse refused to sign both. *Id.* As a result, Clark approved an additional 30-day extended detainer without Flying Horse's signature. *Id.*

On September 13, 2016, Flying Horse's case manager asked Flying Horse to sign documents agreeing to transfer to the CTP and a 30-day extended detainer. *Id.* ¶ 10. Flying Horse refused to sign both. *Id.* Brad Lewandowski, the designee of Clark, approved an additional 30-day extended detainer without Flying Horse's signature. *Id.*

Because Flying Horse refused to accept the parole plan of transfer to the CTP, Hansen submitted a violation report on September 14, 2016 and a warrant was issued. *Id.* ¶ 11. On September 15, 2016, the extended detainer was canceled. *Id.*

On January 11, 2017, the South Dakota Board of Pardons and Paroles conducted a parole violation hearing regarding Flying Horse. *Id.* ¶ 13. The Board decided to revoke Flying Horse's parole. *Id.* ¶ 14. On January 26, 2017, Flying Horse appealed. *Id.* ¶ 15.

## LEGAL STANDARD

Pro se filings must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even with this construction, "a pro se [filing] must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780

4

F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Craig*, 144 F.3d 593, 595 (8th Cir. 1998). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law.'" *Id.* at 910-11 (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). The facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**DISCUSSION**

**I.   Motion to Add Plaintiffs and Certify Class Action**

Flying Horse moves to join additional plaintiffs (Docket 195) and to certify a class action (Docket 197). Flying Horse seeks to add Kenneth Hauge and Justin Brown as plaintiffs. Docket 195. Rule 19(a) provides that parties should be joined to an action (1) if complete relief cannot be accorded among all the parties; (2) if failure to join the party may impair or impede that party's ability to protect an interest that is the subject of the lawsuit; or (3) if an existing party in the lawsuit may be subjected to a substantial risk of double, multiple, or inconsistent obligations should the party not be joined. *See* Fed. R. Civ. P. 19(a). Flying Horse fails to show how a judgment issued without Hauge or Brown might prejudice them. Nothing prevents Hauge or Brown from pursuing their own claims. Thus, the court denies Flying Horse's motion to add plaintiffs.

To bring a class action under the Federal Rules of Civil Procedure, a plaintiff must meet both the general prerequisites for class actions in Rule 23(a) as well as the requirements for at least one of the subdivisions of Rule 23(b). Fed. R. Civ. P. 23. To receive class certification under Rule 23, a movant must demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting each of these prerequisites to class certification, movants must also satisfy one of the circumstances outlined in Rule 23(b)(l)–(3).

After reviewing Flying Horse's pleadings and his motion for class certification, it is apparent that Flying Horse is incapable of fairly and adequately protecting the legal interests of his purported class. *See* 7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1769.1 (3d ed. 2019), (class representatives cannot appear pro se). Furthermore, Flying Horse's motion for class certification does not demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). Flying Horse has failed to satisfy two of the four prerequisites to class certification. Thus, the court denies Flying Horse's motion for certification of a class.

## II. Motion for Summary Judgment

### A. Qualified Immunity

Defendants, in their individual capacity, move for summary judgment based on qualified immunity. Docket 152. To show a prima facie case under 42 U.S.C. § 1983, Flying Horse must show that (1) defendants acted under color of state law and (2) "the alleged wrongful conduct deprived [him] of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (citation omitted). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

7

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity the court asks (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may address the elements in any order and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1. Unlawful Detainment

A parolee has a liberty interest in his conditional freedom that is "within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. 471, 482-84 (1972). The court found that Flying Horse stated a claim for money damages under the Fourteenth Amendment when he alleged that defendants detained him for a period of time without a parole detainer, without pending criminal charges, and without revoking his parole. Docket 27.

Flying Horse argues that the parole detainers issued on June 8, 2016, August 11, 2016, and September 13, 2016 were invalid because he did not sign them. Docket 176 ¶ 9. Flying Horse asks the court to infer that his signature was required because Exhibit 17 (Docket 9-17) states that Flying Horse refused to sign the agreement and that it was subsequently approved by Clark without Flying Horse's signature. *Id.* Flying Horse disputes that DOC policy authorized the Executive Director of Parole Services, or his designee, to issue an extended

8

detainer for up to ninety days without his signature and Flying Horse relies on his suggested inference as evidence. *Id.* Hansen's affidavit disputes Flying Horse's inference. Docket 55 ¶¶ 9-11. Hansen states that it was because Flying Horse refused to sign the voluntary extension that he sought authorization for an extended detainer. *Id.* Flying Horse provides no evidence that his signature was required.

The undisputed facts show that Flying Horse was never detained without pending criminal charges, a parole detainer, or report of parole violation. Dockets 156 ¶¶ 4-14; 176 ¶¶ 4-11. Flying Horse was taken into custody under criminal charges on May 17, 2016. Docket 156 ¶ 4. Then, from June 1 until September 15, Flying Horse was held on successive parole detainers. *Id.* ¶¶ 4-11. This includes the time from August 11, 2016 to September 13, 2016 when Flying Horse was held on parole detainers because he refused transfer to the CTP. *Id.* ¶¶ 9-11.

Flying Horse failed to show how defendants violate his Fourteenth Amendment rights when they detained him from June 1, 2016 until September 15, 2016. Defendants are entitled to qualified immunity on Flying Horse's Fourteenth Amendment claim.

### 2. Retaliation

To establish a retaliation claim, Flying Horse must show "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the

9

exercise of the protected activity." *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). In order to succeed on a retaliation claim, a plaintiff must show that the "adverse action taken against him was 'motivated at least in part' by his protected activity . . . ." *Id.* (quoting *Revels*, 382 F.3d at 876). Although "[t]he causal connection is generally a jury question, . . . it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (quoting *Revels*, 382 F.3d at 876)).

Flying Horse alleges that defendants retaliated against him for defending himself from the May 17, 2016 criminal charges by manipulating the parole detainers against him. Dockets 9 at 18, 174 at 11. It is undisputed that defendants initially detained Flying Horse because defendants believed that the Pennington County States Attorney's office intended to recharge him. Dockets 156 ¶ 6; 176 ¶ 4. And when defendants learned that Pennington County was not going to recharge Flying Horse, defendants offered Flying Horse a parole plan that would move Flying Horse to the CTP. Dockets 156 ¶¶ 8-11; 176 ¶¶ 4-5, 10-11. Flying Horse, however, refused to consent to plan. *Id.* From that point, the reason Flying Horse was not released was because Flying Horse did not have an approved parole plan. *Id.* Flying Horse offers no evidence of retaliatory motive. Defendants are entitled to qualified immunity on Flying Horse's retaliation claim.

**B. Official Capacity Claims**

Flying Horse sued all defendants in their official capacity under 42 U.S.C. § 1983. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. *Id.*

While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.*

Here, as Flying Horse's requested remedy, he seeks to recover money damages. Docket 9 at 39-40. Because Flying Horse sued defendants in their official capacity, Flying Horse has asserted a claim for money damages against the state of South Dakota. South Dakota has not waived its sovereign immunity. Thus, the court finds that defendants are protected by sovereign immunity. Defendants motion for summary judgment is granted as to Flying Horse's official capacity claims for damages.

**C. Claims for Declaratory and Injunctive Relief**

Flying Horse seeks declaratory and injunctive relief. Docket 58. Claims for declaratory and injunctive relief are rendered moot when a prisoner is released. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (discussing

11

*Hickman v. Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998) and *Sargent*, 780 F.2d at 1337. This is true even if the prisoner argues he might, at some future time, be incarcerated at the same prison. *Smith*, 190 F.3d at 855. Flying Horse has been released from custody. Docket 236. Therefore, any claims for declaratory and injunctive relief are moot.

### D. Absolute Immunity

Flying Horse names the South Dakota Board of Pardons and Paroles (Board) and South Dakota Department of Corrections (DOC) as defendants. Dockets 58, 59, 60, 90. The Supreme Court has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Will*, 491 U.S. at 65 (citations omitted). "Eleventh Amendment immunity extends to states and 'arms' of the state[.]" *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) (internal citation omitted). Thus, Flying Horse's claims against the DOC and the Board, which are state entities, are barred by the Eleventh Amendment.

Thus, it is ORDERED

1. Defendants' motion for summary judgment (Docket 152) is granted.
2. Flying Horse's motion to join additional plaintiffs (Docket 195) is denied.
3. Flying Horse's motion to certify class action (Docket 197) is denied.
4. Flying Horse's motion to stay (Docket 158) is denied as moot.
5. Flying Horse's motion to modify scheduling order (Docket 193) is denied as moot.

6. Flying Horse's motion for order permitting him to file a rebuttal (Docket 203) is denied as moot.

7. Flying Horse's motion for order directing the clerk of court to provide periodic copies of the updated docket sheet (Docket 215) is denied as moot.

DATED August 1, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE